PACIFIC CABLE RY. CO. v. CONSOLIDATED PIEDMONT CABLE CO.

(Circuit Court of Appeals, Ninth Circuit. May 28, 1894.)

No. 130.

PATENTS — LIMITATION BY PRIOR STATE OF ART — TRAMWAY FOR CURVES AND CABLE GRIPS.

The Hallidie reissue patent, No. 10,681, for a tramway for curves and cable grips, the object of which was to prevent the grip striking the horizontal sheaves carrying the cable around curves, claiming the main curve of the track and slot, in combination with a guide rail beneath the sheaves, and the grip, even if valid, must be limited to the combination described, the only new element in which is the separate guide rail, and is not infringed by a device using, instead of a guide rail, the lower flange of the slot iron widened to furnish a bearing surface for the grip shank, the contact of which is direct, without the interposition of the friction rollers described in the patent.

This was a suit brought by the Pacific Cable Railway Company against the Consolidated Piedmont Cable Company for infringement of a patent.

William F. Booth, for appellant.

Wheaton, Kalloch & Kierce, for appellee.

Before GILBERT, Circuit Judge, and ROSS and HANFORD, District Judges.

GILBERT, Circuit Judge. This appeal is taken from the final decree of the circuit court dismissing the bill in a suit brought by the appellant as complainant, alleging infringement by the defendant of reissue letters patent No. 10,681, of date February 2, 1886, granted to Andrew S. Hallidie, for "tramway for curves and cable grips." The patent under consideration relates to improvements in cable railways. In such railways the traveling cable is carried in an underground tube between the tracks. The car carries a grip, the shank of which extends downward through a continuous, narrow slot in the top of the tube. At the end of the shank a gripping device grasps and holds the cable, thereby propelling the car. The slot in the tube is bounded by slot irons, which are parallel with the tracks, and lie midway between the same. In passing around a curve of the track, the cable is carried against horizontal sheaves lying upon the inner side of the curve, within the tube. When the grip, holding fast to the cable, reaches a curve in the road, the tendency of the cable, in passing around the curve, is to draw the grip towards the inner wall of the curve, and to strike the horizontal sheaves. To prevent such striking of the sheaves is the object of the Hallidie invention. In the Hallidie device a guide rail is placed within the tube, against the inner wall of the same, at the curve, and between the horizontal cable-carrying sheaves and the slot iron. The guide rail, as described in the patent, may be either smooth, or furnished with horizontal rollers set at intervals along its entire length. If the smooth rail is used, the grip shank is furnished with a horizontal friction roller, so placed as to revolve against the rail. If the guide rail, with rollers, is used, the grip shank carries a pivoted, skate-shaped shoe, which comes in contact with, and passes over, the rollers. Letters patent for the Hallidie invention were first granted in England, December 13, 1879. On February 12, 1884, the application for the American patent was filed. The claim of the patent, as finally allowed, reads as follows:

"In a cable railway, the main curve of the track and slot, in combination with the guide rail beneath, and the cable-carrying sheaves for carrying the cable around the curves, and a grip as set forth."

It is to be noted that in this claim, as formulated, no reference is made to the device or mechanism to be used to bring the grip shank into bearing upon the guide rail, but in the specifications and drawings the roller and pivoted shoe are plainly indicated and described. The defendant has no separate guide rail upon its cable railway curves, but uses for the purpose of a guide rail

the lower flange of the slot iron, which is widened upon the inner wall of the curve to furnish a smooth bearing surface for the grip shank, the contact of which is direct, and without the interposition of a roller. It is contended by the appellant that the relationship of these parts, their functions and objects, are the same in the two structures, and that the mode of operation of each combination is the same, accomplishing the same result by the same means, and that, therefore, the defendant has infringed the Hallidie patent.

In considering the question of infringement, it is necessary, first, to determine what is the Hallidie invention. Between the year 1864 and the year 1876, several patents were granted for improvements in cable tramways, and the various devices used in connection therewith. In some of these patents, distinct reference was made to the passage of curves in the cable railways. In the patent to A. E. Beach (No. 42,039), of March 22, 1864, the statement is made that "the rails which pass around sharp curves are intended to be interiorly enlarged so as to receive stationary friction wheels within them, for the cable to press against, and thus reduce friction." On April 18, 1876, a patent was granted to A. E. Hovey for an improvement in rope-gripping devices for propelling vehicles (letters patent No. 176,136); and on September 18, 1877, a patent was granted to the same patentee for an improvement in endless-rope traction railways (letters patent No. 195,372). In his gripping device, Hovey placed two horizontal friction rollers, 1, 1, and described them as "secured horizontally so as to prevent the shank of the grip from coming in contact with the sides of the slot as it moves through the tube." In his second patent, he described his slot iron as "formed of angle iron, for greater strength, to resist the weight and strain from vehicles passing over them, and as affording a plane bearing surface within and beneath the groove for the grinding rollers in the grip." The operation of this combination described in the Hovey patents is precisely the same as that of Hallidie; and although Hovey has made no specific claim for, or reference to, the adaptability of his combination of rollers and guide rail to curves in the track, such adaptation is plainly discernible from a simple inspection of its construction. When the Hallidie American patent was applied for, the examiner at first rejected the application upon the ground that the Hovey patent of September 18, 1877, described substantially the same device. Hallidie thereupon distinguished his device from that of Hovey in two respects: First, that in the Hovey device the slot rails were at too great an elevation above the grip and cable to successfully resist the pressure upon a curve, whereas the Hallidie guide rails were placed lower, and in the horizontal plane of the grip; and, second, that the slot irons, as usually made, were not of strength sufficient to resist the pressure, and would be liable to be separated or displaced. Upon these considerations the Hallidie claim was allowed, and the patent was granted. The Hallidie combination, as patented, therefore takes the cable-carrying sheaves, which were old, and the grip, which was old, and introduces the new element of a separate guide rail, and applies the combination to a curve

in the road, which was also old. Without pausing to discuss the merit of his patent, or to decide whether invention is displayed in his combination, or whether his combination, as described in his claim, is inoperative for want of some device or mechanism to bring the grip shank into bearing against the guide rail, it is sufficient for the purposes of this appeal to confine ourselves to the consideration that, in view of the prior patents, Hallidie must be limited to his combination as described, one of the elements of which—and the only new element—is the separate guide rail. This the defendant has not used. On the contrary, it has used for the bearing surface of its grip shank a rail which was old, and had been described and used for the same purpose in the Hovey patents of 1876 and 1877. This difference is sufficient to establish the defense of noninfringement. But if we are to regard as part of the Hallidie combination the horizontal friction roller, by which the bearing of the grip shank against the smooth guide rail is effected, then it will become apparent that the defendant has made still further deviation from the Hallidie device, by dispensing with the friction roller, and bringing the grip shank into direct bearing upon the guide rail, by means of a projection of the grip shank, or a shoe firmly fixed thereon. It is true that, in the application for his American patent, Hallidie inserts the following clause, which does not appear in his application for the English patent: "In practice, I prefer to employ a shoe which will travel upon the smooth guide rail, as this will produce a smoother and more even movement." But no claim is made for the shoe, in that connection; and it is not intimated that Hallidie, then or at any time, has claimed to be the inventor of the combination with the shoe, or the discoverer of the fact that a smoother or more even movement is thereby produced. The evidence, on the contrary, makes it probable that the idea of the shoe in conjunction with the smooth guide rail was taken by Hallidie from its use by Hovey in a cable railway constructed by the latter for the Chicago City Railway Company nearly two years before the application for Hallidie's American patent was filed.

In either view of the complainant's patent, it is evident that the defendant is not justly chargeable with its infringement; and the decree of the circuit court, dismissing the bill, is affirmed, with costs to the appellee.